

FILED

May 9, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 3:30 PM

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | |
|---|---|
| **WALTER BURLESON,** ) | **Docket No. 2016-08-1241** |
| **Employee,** ) | |
| **v.** ) | |
| **GERMANTOWN PARTNERS** ) | **State File No. 78490-2016** |
| **SUPERCUTS,** ) | |
| **Employer,** ) | |
| **And** ) | |
| **ACCIDENT FUND,** ) | **Judge Amber E. Luttrell** |
| **Insurance Carrier.** ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on April 13, 2017, on Mr. Burleson's Request for Expedited Hearing. Mr. Burleson requested medical and temporary disability benefits for an alleged September 20, 2016 back injury and attorneys' fees under Tennessee Code Annotated section 50-6-226(d)(b)(1) (2016) for wrongful denial of benefits. The central legal issue is whether Mr. Burleson came forward with sufficient evidence to demonstrate an injury arising primarily out of and in the scope of his employment. The Court finds he did not and thus holds he is not entitled to the requested benefits at this time.

### History of Claim

Mr. Burleson worked as a stylist for Germantown Supercuts. His primary job duties involved cutting, coloring, and washing clients' hair. Mr. Burleson alleged an injury to his low back on September 20, 2016, after washing a female client's hair.[1] Once finished, he helped his client, whom he described as "unsteady," stand up from the chair when his "back gave." Later in his testimony, he described "sharp instant pain" in his back upon assisting his client. Mr. Burleson denied any prior injuries to his back. Mr. Burleson stated the receptionist, Kendra Thompson, was standing near the washing

---

[1] Mr. Burleson testified he could not remember his client's name.

1

station when the incident occurred and witnessed the incident. Mr. Burleson completed his client's haircut; however, shortly afterward, he experienced pain in his low back and difficulty standing up straight. In light of his symptoms, Mr. Burleson lay down on the floor in the office. He stated Ms. Thompson saw him and talked to him while he lay on the floor. Ms. Thompson did not testify at the hearing.

Later that day, Mr. Burleson approached the assistant manager, Ahmad Abudidab, while he was cutting a client's hair, and asked if he could leave early. However, the parties dispute the details of the conversation. Mr. Burleson testified he told Mr. Abudidab his back was hurting from "washing a client," and told him he needed to leave early. Mr. Burleson further stated Mr. Abudidab allowed him to leave and informed him he would have to complete an incident report with Johnny Richards, the salon manager, who was off work that day. Mr. Abudidab acknowledged Mr. Burleson asked to leave early and he allowed him to do so but denied Mr. Burleson mentioned his back hurting. Mr. Abudidab testified Mr. Burleson regularly asked to leave early when business was slow in the salon.

After leaving the salon, Mr. Burleson testified he went home and lay on the couch. The next day, he presented to the emergency room at Baptist Hospital. The parties offered Mr. Burleson's medical records into evidence at the hearing. A "Check-In Sheet" in the emergency room indicated Mr. Burleson complained of "back, legs and testicle pain." The form asks, "Is this visit work related," and "No" is checked. (Ex. 5 at 112.) The history stated, "Pt presents to ED c/o lower back pain onset 2 days. Pt states his 'hips felt offset.'" *Id.* at 80. The provider diagnosed a strain of the muscle, fascia, and tendon of the lower back and restricted Mr. Burleson from working for two days. There is no mention of a work injury in the narrative record.

Mr. Burleson called salon manager, Johnny Richards, from the emergency room. Again, the parties agreed they spoke, but disputed the substance of the conversation. Mr. Burleson recalled reporting his work injury to Mr. Richards and advising him, either in that conversation or a subsequent conversation, that Kendra Thompson witnessed the incident. Mr. Richards testified Mr. Burleson only told him he was taking a sick day and would not be at work. Mr. Richards acknowledged, however, that he spoke with Mr. Burleson several days later and Mr. Burleson reported a September 20 work incident. Mr. Richards took a statement over the telephone from Mr. Burleson. The parties agreed Supercuts did not offer Mr. Burleson a panel of physicians or authorize medical treatment; thus, Mr. Burleson sought treatment on his own through TennCare.

The day after his emergency room visit, Mr. Burleson sought chiropractic treatment with Dr. Caelyn Newport, D.C., for his back complaints. *Id.* at 121-122. There is no history of a work injury in Dr. Newport's record.

Following that visit, Mr. Burleson presented to Dr. Douglas Cannon, an

2

orthopedist, on September 23 for his back pain. Dr. Cannon's history indicated Mr. Burleson reported "a little aching on Tuesday, and Wednesday he picked up his daughter and just developed severe pain. He could barely stand and walk[.] . . . He has never had this before." *Id.* at 9.[2] Dr. Cannon diagnosed a "probable acute L5-S1 disc herniation with radiculitis." Dr. Cannon's record did not mention a work injury. Mr. Burleson testified on cross-examination that he disagreed with Dr. Cannon's wording in the history section of his record. Mr. Burleson explained he told Dr. Cannon he attempted but could not pick up his daughter. Dr. Cannon ordered conservative treatment.

According to the medical records, Mr. Burleson first gave a history of his alleged work injury to his back on October 3, at his physical therapy initial evaluation. The record indicated the following history:

> Mr. Burleson reports about 2-3 weeks ago, he was working at his job as a stylist and was trying to help a woman out of the chair, bent over and felt immediate pain in his back. He was able to continue work that day, but later on the next day had a severe increase in pain[.] . . . He went to the ER.

*Id.* at 139.

Mr. Burleson continued treating with different providers for his back. He returned to Baptist Hospital emergency room on two more occasions and the check-in sheets for those visits checked "Yes" in response to the question, "Is this visit work-related?" *Id.* at 70 and 32. The emergency room physician referred Mr. Burleson to Dr. Kenan Arnautovic, a neurosurgeon, for evaluation. When Mr. Burleson saw Dr. Arnautovic, he complained of low-back pain and provided a history of his treatment to date. *Id.* at 1. Dr. Arnautovic recommended surgery. There is no mention in Dr. Arnautovic's record of a work injury. However, Dr. Arnautovic noted an addendum at the end of his record, which stated, "Following my visit with Mr. Burleson today we found out that he is filing a workman's comp claim for his injuries. We therefore cannot schedule his surgery until this is cleared up." *Id.* at 4.

Mr. Burleson testified Dr. Arnautovic could not treat him upon learning he claimed a work-related injury; therefore, he resumed treatment at Campbell Clinic and saw Dr. Francis Camillo for surgical evaluation. Mr. Burleson first saw Dr. Camillo six months following the alleged injury and gave a history of a work injury when "he was helping one of his clients out of a chair, and she fell, and he went to grab her. He felt pain in his back, and this has been going on since then." *Id.* at 129. At the hearing, on cross-examination, Mr. Burleson also disputed Dr. Camillo's wording in his record and testified he did not tell Dr. Camillo his client "fell." He insisted, "That is his wording, not mine." Dr. Camillo operated on Mr. Burleson on March 28, 2017.

---

[2] The Court notes Tuesday was the September 20 alleged date of injury.

Mr. Burleson testified he is still treating and has not worked since the injury. He asserted no doctor has released him back to work and confirmed Supercuts did not pay any medical benefits or temporary disability benefits for this injury. Mr. Burleson disputed the wage statement filed by Supercuts. He contended the wage statement reflected only his hourly pay and did not include gratuity. Mr. Burleson testified he made approximately $300 to $400 in tips per week.

Supercuts denied Mr. Burleson's claim and argued his testimony was contradicted by its two witnesses, Johnny Richards and Ahmad Abudidab. Contrary to Mr. Burleson's testimony, Mr. Richards testified he did not learn Mr. Burleson alleged a work-related injury until several days after the incident when he received a medical off-work slip dropped off by Mr. Burleson's wife. He subsequently spoke to Mr. Burleson and took his statement concerning the alleged injury. Mr. Richards did not offer Mr. Burleson a panel of physicians and denied knowing what to say at that time. He testified he had only been the manager for approximately one year and had not been trained regarding the process for work-related injuries. The salon's owner instructed him to take Mr. Burleson's statement and investigate the injury. In his investigation, Mr. Richards contacted Mr. Burleson's clients from September 20 and determined he was washing Tracy Phales' hair at the time he alleged his injury. Mr. Richards testified Ms. Phales did not corroborate Mr. Burleson's account of the incident. Ms. Phales did not testify.

Mr. Abudidab adamantly testified Mr. Burleson never reported any incident to him on September 20. Mr. Abudidab knew the procedure for work-related injury reports and testified if Mr. Burleson had reported an injury, he would have prepared an incident report and called the salon owner. Mr. Abudidab first learned of Mr. Burleson's injury when he returned to the salon three to four days later. He stated he was "shocked" to hear from co-workers that Mr. Burleson called in stating he was off work due to a work injury. Mr. Abudidab questioned Ms. Thompson and other co-workers, and they knew nothing about the alleged incident.

At the hearing, Mr. Burleson argued he came forward with sufficient evidence supporting a back injury arising out of his employment. He argued he provided proper notice to Supercuts and contended all the medical records "point to a September 20 injury and roughly how the injury happened." Mr. Burleson requested past and ongoing medical benefits; temporary disability benefits from September 21, 2016, to the present at a compensation rate of $465.28; and attorney's fees of $5,460 for wrongful denial of benefits under Tennessee Code Annotated 50-6-226 (d)(1)(B) (2016).

Supercuts argued Mr. Burleson failed to meet his burden of proving a specific injury, based upon the conflicting testimony of its witnesses and the medical records. It requested Mr. Burleson's claim be denied. In the alternative, Supercuts disputed the compensation rate and argued the proof in this case failed to justify any attorney's fee

4

award for wrongful denial of benefits.

## Findings of Fact and Conclusions of Law

*Standard applied*

Because this case is in a posture of an Expedited Hearing, Mr. Burleson need not prove every element of his claim by a preponderance of the evidence. Instead, he must come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-9 (Mar. 27, 2015).

*Analysis*

To be compensable, Mr. Burleson must show his alleged injury arose primarily out of and in the course and scope of his employment and was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14) (2016).

The preliminary question the Court must address is whether Mr. Burleson came forward with sufficient evidence at this interlocutory stage to establish the occurrence of a specific incident on September 20, 2016. The Court holds he did not for the reasons set forth below.

Mr. Burleson testified as he assisted an unsteady client stand up from a chair his "back gave." He continued with the client and finished her hair. He stated Ms. Thompson witnessed the incident; however, he did not state whether he spoke to Ms. Thompson or what Ms. Thompson specifically witnessed. Mr. Burleson also testified Ms. Thompson was the only coworker who saw him on the floor of the office and spoke to him, but she did not testify. Additionally, Mr. Burleson claimed he told Mr. Abudidab about his injury the same day. However, Mr. Abudidab disputed his testimony and denied Mr. Burleson mentioned any work injury. Mr. Abudidab and Mr. Richards also testified that Ms. Thompson denied any knowledge of Mr. Burleson's alleged injury. Given the conflicting testimony and Ms. Thompson's absence from the hearing, the Court finds no corroboration of Mr. Burleson's testimony concerning the event.

Further, Mr. Burleson's histories at his doctor visits immediately following the injury date are not consistent with his testimony. Mr. Burleson saw three different medical providers—Baptist ER, Dr. Newport, and Dr. Cannon—in the three days following his alleged injury date; yet, there is no history of a work injury mentioned in those

records. Mr. Burleson attempted to clarify the discrepancy in Dr. Cannon's record. He testified Dr. Cannon incorrectly noted the history when he stated, "He was noticing a little aching Tuesday, and Wednesday he picked up his daughter and just developed severe pain." Mr. Burleson explained he told Dr. Cannon that he could *not* pick up his daughter. While it is plausible Dr. Cannon misunderstood Mr. Burleson's statement concerning his daughter, Mr. Burleson still did not explain why there was no mention in the history of his work injury. Moreover, he offered no testimony to explain why the emergency room record from the day *after* his injury failed to mention his work injury or why he checked "No" to the question, "Is this visit work related?" Absent any proof to reconcile these inconsistencies, the Court holds Mr. Burleson did not provide sufficient evidence that he would likely prevail at a hearing on the merits regarding the occurrence of a specific incident.

Had Mr. Burleson established the specific-incident criterion of the statutory definition of injury, the Court finds an absence of medical evidence showing Mr. Burleson's described injury contributed more than fifty percent in causing his condition or need for medical treatment. While Dr. Camillo's March 6, 2017 record noted a history somewhat consistent with Mr. Burleson's testimony concerning the September 20 incident, the Court finds Dr. Camillo offered no opinion regarding causation. The lesser evidentiary standard of an Expedited Hearing does not relieve Mr. Burleson of producing some evidence of an injury arising primarily out of and in the course and scope of employment, even if that evidence does not rise to the level of a "preponderance of the evidence." *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015). Thus, the Court holds Mr. Burleson did not come forward with sufficient evidence establishing he would likely prevail at a hearing on the merits regarding medical causation.

For the foregoing reasons, the Court holds Mr. Burleson did not come forward with sufficient evidence at this interlocutory stage to show he would likely prevail at a hearing on the merits in establishing his injury arose primarily of out of his employment at Supercuts. Accordingly, his request for benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Burleson's request for medical and temporary disability benefits is denied.

2. This matter is set for a Status Hearing on Monday, **June 26, 2017, at 1:00 p.m.** Central Time. **The parties must call 855-543-5039 to participate in the hearing.**

6

**ENTERED** this the ____ day of May, 2017.

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. First Report of Injury
2. Wage Statement
3. Notice of Denial
4. Attorney fee itemization-Monica Rejaei
5. Collective Exhibit-Medical Records
6. Campbell Clinic off-work slip
7. Collective Exhibit-Dr. Cannon and Dr. Camillo notes

Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Pre-Hearing Brief
5. Employer's Pre-Hearing Brief
6. Employer's Witness List

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the ___9th day of May, 2017.

| Name | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|
| Monica Rejaei, Esq., Attorney for Employee | | X | mrejaei@nstlaw.com |
| Gordon Aulgur., Esq., Attorney for Employer | | X | Gordon.aulgur@accidentfund.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

9